UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOSEA MOORE,

Plaintiff,

v.

BRUCE HOLDEN et al.,

Defendants.

Case No. 1:26-cv-1422

Honorable Robert J. Jonker

# OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff filed an application to proceed *in forma pauperis* (ECF No. 2); however, Plaintiff is barred from proceeding *in forma pauperis* under 28 U.S.C. § 1915(g). Where a plaintiff is ineligible for *in forma pauperis* status under 28 U.S.C. § 1915, "he must make full payment of the filing fee before his action may proceed." *In re Alea*, 286 F.3d 378, 380 (6th Cir. 2002).

Plaintiff has filed at least three lawsuits that were dismissed as frivolous, malicious, or for failure to state a claim, and Plaintiff has not demonstrated that he is in imminent danger of serious physical injury to allow him to proceed *in forma pauperis* in this action. Further, Plaintiff has not paid the $405.00 civil action filing fees applicable to those not permitted to proceed *in forma pauperis.*[1] Accordingly, for the reasons set forth below, this action will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g).

[1] The filing fee for a civil action is $350.00. 28 U.S.C. § 1914(a). The Clerk is also directed to collect a miscellaneous administrative fee of $55.00. 28 U.S.C. § 1914(b); https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule. The miscellaneous administrative fee, however, "does not apply to applications for a writ of habeas

**Discussion**

The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which was enacted on April 26, 1996, amended the procedural rules governing a prisoner's request for the privilege of proceeding *in forma pauperis*. As the United States Court of Appeals for the Sixth Circuit has stated, the PLRA was "aimed at the skyrocketing numbers of claims filed by prisoners–many of which are meritless–and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). For that reason, Congress created economic incentives to prompt a prisoner to "stop and think" before filing a complaint. *Id.* For example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in 28 U.S.C. § 1915(b). The constitutionality of the fee requirements of the PLRA has been upheld by the Sixth Circuit. *Id.* at 1288.

In addition, another provision reinforces the "stop and think" aspect of the PLRA by preventing a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files meritless lawsuits. Known as the "three-strikes" rule, the provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the section governing proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The statutory restriction "[i]n no event," found in § 1915(g), is express and unequivocal. The statute does allow an exception for a prisoner who is "under imminent danger of

---

corpus or to persons granted *in forma pauperis* status under 28 U.S.C. § 1915." https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule.

serious physical injury." The Sixth Circuit has upheld the constitutionality of the three-strikes rule against arguments that it violates equal protection, the right of access to the courts, and due process, and that it constitutes a bill of attainder and is *ex post facto* legislation. *Wilson v. Yaklich*, 148 F.3d 596, 604–06 (6th Cir. 1998).

Plaintiff has been an active litigant in the federal courts in Michigan. In more than three of Plaintiff's lawsuits, the Court entered dismissals on the grounds that the cases were frivolous, malicious, and/or failed to state a claim. *See, e.g.*, Order & J., *Moore v. Newton*, 5:99-cv-60532-GCS (E.D. Mich. Nov. 2, 1999), (ECF Nos 5, 6); Order Adopting R&R, *Moore v. Holden*, 4:96-cv-180 (W.D. Mich. Dec. 2, 1996), (ECF No. 5); Op. & J., *Moore v. Kula*, No. 1:96-cv-262 (W.D. Mich. Apr. 25, 1996), (ECF Nos. 3, 4); Order & J. Adopting R&R, *Moore v. Mohr et al.*, 2:95-cv-86-GJQ-TPG (W.D. Mich. May 25, 1995), (ECF No. 4). Although two of the dismissals were entered before enactment of the PLRA on April 26, 1996, the dismissals nevertheless count as strikes. *See Wilson*, 148 F.3d at 604. In addition, Plaintiff has been denied leave to proceed *in forma pauperis* under the three-strikes rule in numerous cases. *See*, *e.g*., Op., Order, & J., *Moore v. Golden et al.*, 1:14-cv-10456-TLL-MKM (E.D. Mich. March 13, 2014) (ECF Nos. 4, 5); Order, *Moore v. Robert*, 2:06-cv-11911-GCS-PJK (E.D. Mich. Oct. 11, 2006), (ECF No. 6).

As explained below, in this action, Plaintiff's allegations do not fall within the "imminent danger" exception to the three-strikes rule. 28 U.S.C. § 1915(g). The Sixth Circuit set forth the following general requirements for a claim of imminent danger:

> In order to allege sufficiently imminent danger, we have held that "the threat or prison condition must be real and proximate and the danger of serious physical injury must exist at the time the complaint is filed." *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008) (internal quotation marks omitted). "Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception." *Id*. at 797–98; *see also* [*Taylor v. First Med. Mgmt.*, 508 F. App'x 488,

> 492 (6th Cir. 2012)] ("Allegations of past dangers are insufficient to invoke the exception."); *Percival v. Gerth*, 443 F. App'x 944, 946 (6th Cir. 2011) ("Assertions of past danger will not satisfy the 'imminent danger' exception."); *cf.* [*Pointer v. Wilkinson*, 502 F.3d 369, 371 n.1 (6th Cir. 2007)] (implying that past danger is insufficient for the imminent-danger exception).
>
> In addition to a temporal requirement, we have explained that the allegations must be sufficient to allow a court to draw reasonable inferences that the danger exists. To that end, "district courts may deny a prisoner leave to proceed pursuant to § 1915(g) when the prisoner's claims of imminent danger are conclusory or ridiculous, or are clearly baseless (i.e. are fantastic or delusional and rise to the level of irrational or wholly incredible)." *Rittner*, 290 F. App'x at 798 (internal quotation marks and citations omitted); *see also Taylor*, 508 F. App'x at 492 ("Allegations that are conclusory, ridiculous, or clearly baseless are also insufficient for purposes of the imminent-danger exception.").

*Vandiver v. Prison Health Services, Inc.*, 727 F.3d 580, 585 (6th Cir. 2013). A prisoner's claim of imminent danger is subject to the same notice pleading requirement as that which applies to prisoner complaints. *Id*. Consequently, a prisoner must allege facts in the complaint from which the Court could reasonably conclude that the prisoner was under an existing danger at the time he filed his complaint, but the prisoner need not affirmatively prove those allegations. *Id.*

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Richard A. Handlon Correctional Facility (MTU) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility, and at Kilby Prison and Saint Elizabeth Hospital, both in Montgomery, Alabama. (Compl., ECF No. 1, PageID.2–3.) Plaintiff sues Dr. Bruce Holden, Dr. William Dinnermam,[2] and Dr. George Kitchen.[3] (*Id*., PageID.1–3.) Plaintiff

---

[2] In the caption of Plaintiff's complaint, he spells Defendant's name as Defendant "Dinnermam," (*see* Compl., ECF No. 1, PageID.1), but in the body of his complaint, he spells it as Defendant "Dinnerman," (*see id*., PageID.4). In this opinion, the Court will use the first spelling as it appears in the caption of Plaintiff's complaint.

[3] In his complaint, Plaintiff indicates that both Defendant Holden and Defendant Kitchen are located in Montgomery, Alabama. Plaintiff does not indicate where Defendant Dinnermam is located.

also sues MTU Nurse Practitioner Unknown Party, and MTU "Grievance Person" Unknown Lake. (*Id.*, PageID.2–3.)

In Plaintiff's complaint, he alleges that in the 1980s, he had two surgeries on his right eardrum, which resulted in a computer microchip being implanted in Plaintiff's head. (*Id.*, PageID.4–5, 7.) Plaintiff states that his first surgery was performed by Defendant Dinnermam in 1982, and his second surgery was performed by Defendant Holden in 1984. (*Id.*, PageID.4.) Plaintiff claims that "the surgeries were a failure because those doctors were only interested in implanting [a] micro[chip] inside of [Plaintiff's] head." (*Id.*, PageID.4–5.) Plaintiff alleges that unnamed "federal agents hid themselves until [Plaintiff] saw them with computers . . . [;] they were sending pains in [Plaintiff's] perforated right ear drum using computers remote control that goes to this microchip[.]" (*Id.*, PageID.4.) On February 24, 2026, Plaintiff saw Nurse Practitioner Defendant Unknown Party at MTU and asked to be sent to the hospital to have the microchip removed. (*Id.*, PageID.8.) Plaintiff alleges that Defendant Unknown Party refused to send Plaintiff to the hospital. (*Id.*) In March 2026, Plaintiff put a grievance in Defendant Lake's mailbox. (*Id.*, PageID.9.) Plaintiff alleges that Defendant Lake held the grievance until the time limit expired. (*Id.*) Plaintiff also alleges that he did not commit the murder that Plaintiff was convicted of and is currently serving a life sentence for. (*Id.*, PageID.5–7.)

As explained below, the Court concludes that Plaintiff has failed to allege any facts which support a finding that he was in imminent danger of serious physical injury at the time he filed this lawsuit. As an initial matter, Plaintiff's allegations regarding the microchip being implanted in his head, the denial of his request to go to the hospital, and the handling of Plaintiff's grievance relate solely to past harm. Allegations of past dangers are insufficient to invoke the imminent danger exception. *See Taylor*, 508 F. App'x at 492.

Moreover, Plaintiff alleges no *facts* to suggest that he was in imminent danger *from the named Defendants* when he initiated this action. Plaintiff only alleges that unidentified "federal agents" "were sending pains in [Plaintiff's] perforated right ear drum using computers remote control that goes to this microchip[.]" (Compl., ECF No. 1, PageID.4.) Plaintiff does not allege any facts to suggest that any of the named Defendants were involved in this continued pain inflicted on Plaintiff. (*See generally id.*) Although the Sixth Circuit has not yet specifically addressed whether the imminent-danger exception requires a nexus between the danger and the allegations of the complaint, *see Vandiver*, 727 F.3d at 588 (declining to reach issue), this Court concurs with the uniform opinion of all seven circuits that have addressed the issue: some nexus between the imminent danger and the claims raised is required in order to protect the meaning of the entire provision. This nexus requirement does not add a judicially created element to the statute. Instead, as the *Pettus* court recognized, a reading of the statute that incorporates a nexus rule flows from the fundamental rule of statutory construction requiring that a statute be read as a whole. *Pettus v. Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009). That rule of construction has been regularly repeated by the Supreme Court:

> The meaning—or ambiguity—of certain words or phrases may only become evident when placed in context. . . . It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132–33 (2000) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)); *see also Clark v. Rameker*, 573 U.S. 122, 131 (2014) (citing *Corley v. United States*, 556 U.S. 303, 314 (2009)).

An equally fundamental canon of statutory interpretation is that exceptions to a general rule must be read narrowly. *See Comm'r of Internal Revenue v. Clark*, 489 U.S. 726, 739 (1989) ("In construing provisions . . . in which a general statement of policy is qualified by an exception,

we usually read the exception narrowly in order to preserve the primary operation of the provision."). And from this last canon arises the related principle that exceptions must not be interpreted so broadly as to swallow the rule. *See Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 530 (2009) (rejecting an interpretation of a statutory exception that "would swallow the rule").

As applied to § 1915(g), the imminent-danger exception must be read in light of the strong general thrust of the PLRA, which was "aimed at the skyrocketing numbers of claims filed by prisoners—many of which are meritless—and the corresponding burden those filings have placed on the federal courts." *Hampton*, 106 F.3d at 1286. In addition, § 1915(g) itself states that "*[i]n no event* shall a prisoner bring a civil action or appeal . . ." if he has three strikes, unless his complaint alleges facts that fall within the narrow exception in issue. 28 U.S.C. § 1915(g) (emphasis added); *Pettus*, 554 U.S. at 297. Interpreting the statute without some link between the imminent danger alleged and the redress sought would cause the exception to swallow the rule, permitting a prisoner to file as many lawsuits as he wishes on any subject—as long as he can state that he is in imminent danger from something, even if that something is unrelated to his claims and unrelated to the named defendants. *See Pettus*, 554 F.3d at 297; *Pinson v. U.S. Dep't of Just.*, 964 F.3d 65, 71 (D.C. Cir. 2020). Such a reading of the statute would be inconsistent with the general rule of statutory construction, which requires that exceptions to a rule be read narrowly, so as not to undermine the general rule. *Clark*, 489 U.S. at 739; 2A Norman J. Singer, *Statutes and Statutory Construction*, § 47.11 at 246–47 (6th ed. 2000) ("[W]here a general provision in a statute has certain limited exceptions, all doubts should be resolved in favor of the general provision rather than exceptions."). Here, Plaintiff has failed to allege facts to show the requisite nexus between any alleged danger and the named Defendants in this action.

In summary, Plaintiff's allegations concerning imminent danger relate solely to past harm, and Plaintiff has failed to allege facts to show the requisite nexus between any alleged danger and the Defendants named in this action. Therefore, for these reasons, Plaintiff's factual allegations do not support the inference that he faced imminent danger of serious physical injury from Defendants when he initiated this action.

Accordingly, Plaintiff is barred from proceeding *in forma pauperis* under § 1915(g). Plaintiff also has not paid the $405.00 civil action filing fees applicable to those not permitted to proceed *in forma pauperis*. The Court will therefore dismiss this action without prejudice. *See Dupree v. Palmer*, 284 F.3d 1234, 1236 (11th Cir. 2002) ("[T]he proper procedure is for the district court to dismiss the complaint without prejudice when it denies the prisoner leave to proceed *in forma pauperis* pursuant to the three strikes provision of § 1915(g)."). Plaintiff is free to refile his complaint as a new action in this Court if he submits the filing fees at the time that he initiates the new action.

## **Conclusion**

For the foregoing reasons, the Court will deny Plaintiff leave to proceed *in forma pauperis*. The Court will dismiss this action without prejudice to Plaintiff's right to refile his complaint as a new action in this Court with the full civil action filing fees.[4]

For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. *See* 28 U.S.C. § 1915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Further, should Plaintiff appeal this decision, he must pay the $605.00 appellate filing

[4] Because Plaintiff has the opportunity to refile his complaint as a new action in this Court by paying the full civil action filing fees at the time of filing the new action, the Court will not assess the district court filing fees in the present action.

fee in a lump sum, because he is prohibited from proceeding *in forma pauperis* on appeal by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.

Dated: September 28, 2026

/s/ Robert J. Jonker
Robert J. Jonker
United States District Judge